**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROBERT E. REIVER,

Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.*,

Defendants.

Civil Action No. 10-1527 (ABJ)

**MEMORANDUM OPINION**

In September 2010, plaintiff Robert E. Reiver brought an action against the District of Columbia, the Metropolitan Police Department, Officer Lauren Griffin, Officer Ricardo Edwards, and Lieutenant John Hedgecock, asserting claims arising out of his arrest for driving under the influence and operating while impaired. The counts that remain are the claims against the individual police officers for unlawful arrest and unlawful imprisonment under 42 U.S.C. § 1983, and the officers have moved for summary judgment. Since the Court finds that the police conduct was objectively reasonable and did not violate plaintiff's clearly established rights, the officers are protected by the doctrine of qualified immunity, and the motion will be granted.

The undisputed facts demonstrate that the officers had probable cause to charge plaintiff with DUI/OWI when they stopped him on Massachusetts Avenue. Plaintiff ultimately passed the breathalyzer test administered at the station, and the Court recognizes that he may justly feel indignant and frustrated about the fact that he was charged anyway. But the question before the Court is not whether it would have been an appropriate course – or even the better course – to

conclude the matter there and release the plaintiff. The issue to be decided is whether it was objectively unreasonable for the officers to believe it was lawful to proceed, and the Court finds that it was not.

**BACKGROUND**

Plaintiff's claims arise out of an October 15, 2009 traffic stop and arrest in the District of Columbia. Pl.'s Statement of Material Facts, Ex. 15 to Pl.'s Opp. to Defs.' Mot. for Summ. J. [Dkt. # 46-15] ("Pl.'s SMF") ¶¶ 1, 22. The arrest took place on a rainy night at 11:30 p.m. Pl.'s Answers to Interrogs., Ex. 1 to Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Opp.") [Dkt. # 46-1] at 2. Plaintiff was at the wheel of his wife's Mercedes, proceeding outbound on Massachusetts Avenue with his headlights off, and defendant Griffin attempted to conduct a traffic stop. Pl.'s SMF ¶¶ 5–6; Pl.'s Answers to Interrogs. at 2. But plaintiff continued to pilot the car for six more blocks with the officer's police cruiser behind him – its lights and sirens activated – before he pulled the car to the side of the road. Pl.'s SMF ¶ 6. When Officer Griffin approached plaintiff's car, she asked him whether he was aware that his headlights were off, and whether he had had anything to drink. Pl.'s Answers to Interrogs. at 2. Plaintiff replied that he was not aware that his headlights were off, and that he had consumed part of a beer earlier that evening. *Id.* According to Officer Edwards, plaintiff also mentioned that he had taken pain medication for a back condition. Def. Ricardo Edwards Dep., Ex. 6 to Def.'s Mot. for Summ. J. [Dkt. # 45-6] ("Edwards Dep.") at 27:9–11. In response to Officer Griffin's request for plaintiff's registration and proof of insurance, plaintiff initially presented an expired insurance card, but he eventually provided the correct card. Pl.'s Answers to Interrogs. at 2.

Following this exchange, Officer Griffin administered two field sobriety tests: a horizontal gaze nystagmus test, and a "walk and turn" test.[1] Pl.'s Answers to Interrogs. at 2; Def. Lauren Griffin Answers to Interrogs., Ex. 2 to Def.'s Mot. for Summ. J. [Dkt. # 45-2] ("Griffin's Answers to Interrogs.") at 5. During the nystagmus test, Officer Griffin observed a "lack of smooth pursuit" as plaintiff's eyes moved from side to side. Griffin's Answers to Interrogs. at 8. Plaintiff does not dispute this observation, but he contends that the fact that he was positioned so that he was facing traffic lights at a nearby busy intersection may have impacted his performance.[2] Pl.'s Opp. at 10; Pl.'s SMF ¶ 15.

For the walk and turn test, Officer Griffin instructed plaintiff to walk in a straight line nine paces forward heel to toe and then nine paces backward heel to toe. Reiver Aff., Ex. 6 to Pl.'s Opp. [Dkt. # 46-6] ¶ 8. Plaintiff failed to follow the instructions by: (1) stepping out of the straight line after his fifth step; and (2) continuing to walk forward for an extra six paces after the completion of nine paces. Pl.'s Answers to Interrogs. at 2–3. Plaintiff maintains that the weather conditions affected his ability to complete the heel to toe walking. Pl.'s Answers to Interrogs. at

---

1 The 'horizontal gaze nystagmus test' measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated 'the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct.' . . . The 'walk and turn test' requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along a straight line for another nine paces. The subject is required to count each pace aloud from one to nine."

*Karamychev v. District of Columbia*, 772 A.2d 806, 808 n.3 (D.C. 2001), quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 585 n.1 (1990) (plurality opinion).

2 While plaintiff attributes any difficulties in the nystagmus test to the lights in the vicinity, he also maintains in his complaint that his imperfect performance on the heel to toe exercise should be excused because it was conducted "at night with limited lighting." Compl. ¶ 22.

2–3. At that point, Officer Griffin ended the field sobriety test and arrested plaintiff for Driving Under the Influence ("DUI") and/or Operating While Impaired ("OWI"). Griffin's Answers to Pl.'s Interrogs. at 8–9; Defs.' Statement of Material Facts, Ex. 8 to Defs.' Mot. for Summ. J. [Dkt. # 45-8] ("Defs.' SMF") ¶ 24; Pl.'s SMF ¶ 22.

Officer Edwards – a new officer, seeking experience – processed the arrest. Edwards Dep., Ex. 6 to Def.'s Mot. for Summ. J. [Dkt. # 45-6] at 30:15–19. Edwards arrived with plaintiff at the Second District police station at approximately midnight. Pl.'s Answers to Interrogs. at 3. By 1:00 a.m., Officer Carter, who is not a defendant in this action, administered a breathalyzer test. *Id*. It returned a blood alcohol level of .00. *Id.* Officer Carter next requested a urine sample for testing, which plaintiff voluntarily provided. *Id.*

In light of the .00 result, plaintiff requested that Lieutenant Hedgecock, the Watch Commander on duty, immediately release him and make an entry in the detention journal instead of continuing to process the arrest.[3] Pl.'s Answers to Interrogs. at 4–5. Lieutenant Hedgecock, however, informed plaintiff that sufficient probable cause existed to continue the arrest, and he refused to utilize the detention journal or release plaintiff from custody. *Id.* Plaintiff was instead transferred to the Central District for processing. Pl.'s Answers to Interrogs. at 5–7. He was later returned to the Second District and was released from custody at 9:00 a.m. *Id*. at 6–7.

Plaintiff was named as a defendant in a case brought by the District of Columbia in D.C. Superior Court. Pl.'s Answers to Interrogs. at 8–9. He was charged with DUI and OWI. *Id.* Both charges were disposed of by a *nolle prosequi* on March 1, 2010. *Id.*

---

3 To make an entry in the detention journal at a police facility means that the Watch Commander determines that an arrestee should be released without charge, fills out PD Forms 728 and 731, and immediately releases the arrestee. Use of the Detention Journal, GO-PCA-502.05 (effective Nov. 22, 2002), *replaced by* GO-PCA-502.05 (Aug. 26, 2010).

Plaintiff filed the complaint in this case on September 9, 2010. For the reasons stated on the record at the June 16, 2011 hearing, and in the Order dated June 17, 2011, [Dkt. # 19], the Court dismissed all counts against the Metropolitan Police Department with prejudice, and dismissed the District of Columbia from Counts I and II without prejudice. On August 4, 2011, the Court granted defendant District of Columbia's motion to dismiss it from Count III, and also dismissed the remainder of Count III *sua sponte*. [Dkt. # 27]. Plaintiff moved to amend the complaint on June 24, 2011. [Dkt. # 19]. The Court denied the motion on August 10, 2011, finding that plaintiff's proposed amendments were futile. [Dkt. # 28].

The officers filed the instant motion for summary judgment on the remaining claims on April 13, 2012. [Dkt. # 45]. Of the remaining claims, Count I alleges that the arrest by Officers Griffin and Edwards on the street violated the common law and the Fourth Amendment of the Constitution of the United States. Compl. ¶¶ 1–2, 53–67. Count II also invokes the common law and the Fourth Amendment, charging Officer Edwards and Lieutenant Hedgecock with false imprisonment for their failure to release the plaintiff after receiving the breathalyzer results. Compl. ¶¶ 1–2, 68–80. Both counts arise under 42 U.S.C. § 1983. Compl. ¶ 1.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a

genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

**ANALYSIS**

Defendants assert the defense of qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). Since the immunity exists to shield properly-acting government officials from the rigors of suit, it should be granted or denied as early as the factual record allows. *Id.* at 227 (emphasizing the significance "of resolving immunity questions at the earliest possible stage in litigation"). Accordingly, it is appropriate to terminate actions on the basis of immunity "on a properly supported motion for summary judgment." *Butz v. Economou*, 438 U.S. 478, 508 (1978). Since the Court finds that there is no genuine dispute of material fact in this case, summary judgment is the appropriate forum to resolve defendants' qualified immunity defense as a matter of law. *See Siegert v. Gilley*, 500 U.S. 226, 231, quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Once a defendant pleads a defense of qualified immunity, '[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.'").

## I. The Standard for Qualified Immunity

The defendant bears the burden of pleading and proving the defense of qualified immunity. *Harlow*, 457 U.S. at 815. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, -- U.S. --, 131 S. Ct. 2074, 2080 (2011), citing *Harlow*, 457 U.S. at 818. In each case, the court may decide which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow*, 457 U.S. at 818. The analysis "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244, quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). This standard, "[w]hen properly applied . . . , protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 131 S. Ct. at 2085, quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The complaint appears to allege false arrest and false imprisonment claims under both the common law and the Fourth Amendment.[4] In general, "the details of constitutional tort actions

4 While plaintiff claims that jurisdiction over this case arises in part from the Fourteenth Amendment, Compl. ¶ 3, the Fourteenth Amendment does not apply to the District of Columbia. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) ("The Fourteenth Amendment . . . applies only to the states."). *See also Ennis v. Lott*, 589 F. Supp. 2d 33, 35 n.2 (D.D.C. 2008) ("The Fourteenth Amendment does not apply to the District of Columbia."). Nonetheless, the other bases for jurisdiction that plaintiff invokes, including Section 1983, provide this Court with subject matter jurisdiction over the remaining claims.

should be shaped by reference to the parallel common law." *Dellums v. Powell*, 566 F.2d 167, 175 (D.C. Cir. 1977). Accordingly, "the elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim" because for either type, "the focal point of the action is the question whether the arresting officer was justified in ordering the arrest of the plaintiff[.]" *Scott v. District of Columbia*, 101 F.3d 748, 753–54 (D.C. Cir. 1996).

In addition, "[t]here is 'no real difference as a practical matter between false arrest and false imprisonment[.]'" *Barnhardt v. District of Columbia*, 723 F. Supp. 2d 197, 214 (D.D.C. 2010), quoting *Shaw v. May Dep't Stores Co.*, 268 A.2d 607, 609 n.2 (D.C. 1970); *see also Gabrou v. May Dep't Stores Co.*, 462 A.2d 1102, 1104 (D.C. 1983) ("In this jurisdiction, the gravamen of a suit for false arrest or false imprisonment is an unlawful detention."). A defendant can defeat a common law false arrest claim if "the arresting officer had probable cause to believe that the arrestee committed a crime." *Scott*, 101 F.3d at 754. Similarly, common law false imprisonment is "the unlawful detention of a person without a warrant or for any length of time whereby he is deprived of his personal liberty or freedom of locomotion[.]" *Bernhardt*, 723 F. Supp. 2d at 214, quoting *Tocker v. Great Atl. & Pac. Tea Co.*, 190 A.2d 822, 824 (D.C. 1963). To succeed under a claim for common law false imprisonment, a plaintiff must demonstrate "that the police acted without probable cause, in an objective constitutional sense, to effectuate his arrest." *Id*. And under the Fourth Amendment, "[a]n arrest based on probable cause cannot constitute an unreasonable . . . seizure." *Carr v. District of Columbia*, 565 F. Supp. 2d 94, 99 (D.D.C. 2008), citing *Whren v. United States*, 517 U.S. 806, 819 (1996), *rev'd on other grounds by* 587 F.3d 401 (D.C. Cir. 2009).

Accordingly, the Court will analyze plaintiff's remaining claims together. The key question is whether, at the time of the detention, a reasonable person would have known that under clearly established law there was no probable cause to arrest and detain plaintiff. "An officer retains qualified immunity from suit if he had an objectively reasonable basis for believing that the facts and circumstances surrounding the arrest were sufficient to establish probable cause." *Wardlaw v. Pickett*, 1 F.3d 1297, 1304 (D.C. Cir. 1993), citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, even if there was not sufficient probable cause, defendants will still be immune from suit if reasonable officers in their positions "could have believed that probable cause existed to arrest [plaintiff]." *Hunter v Bryant*, 502 U.S. 224, 228–29 (1991).

## II. Defendant Officers Griffin and Edwards will be Granted Qualified Immunity for the Claims Arising from Plaintiff's Initial Arrest.

The Court is satisfied that a reasonable officer could have believed that there was probable cause to support the initial arrest.

In the common law context, "probable cause exists where the facts and circumstances within the arresting officer's knowledge . . . are sufficient in themselves to warrant a reasonable belief that an offense has been or is being committed." *In re T.H.*, 898 A.2d 908, 912 (D.C. 2006). Under the Fourth Amendment, "[p]robable cause exists when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense.'" *Marcus v. District of Columbia*, 646 F. Supp. 2d 58, 61 (D.D.C. 2009), quoting *United States v. Wesley*, 293 F.3d 541, 545 (D.C. Cir. 2002) (emphasis omitted). Thus, under either standard, the arrest is lawful when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant an objectively reasonable belief that an offense has been or is being committed.

A. Officer Griffin

At the time of the initial arrest, Officer Griffin had a reasonable basis to believe that plaintiff had committed the offenses of DUI or OWI.[5] D.C. Code § 50-2201.05(b)(1)(A)(i)(II) (DUI) provides that "[n]o person shall operate or be in physical control of any vehicle in the District . . . [w]hile under the influence of intoxicating liquor or any drug or any combination thereof." D.C. Official Code § 50-2201.05(b)(2)(A) (OWI) provides that "[n]o person shall, while the person's ability to operate a vehicle is impaired by the consumption of intoxicating liquor, operate or be in physical control of any vehicle in the District." "[T]he alcohol-impairment threshold is the same for DUI and OWI." *Taylor v. District of Columbia*, 49 A.3d 1259, 1266 (D.C. 2012).

There can be little doubt that the circumstances leading to the arrest warranted a reasonable belief that plaintiff had been operating a vehicle while under the influence of intoxicating liquor, a drug, or some combination of the two. In *Poulnot v. District of Columbia*, 608 A.2d 134 (D.C. 1992), the D.C. Court of Appeals quoted from an opinion by the Supreme Court of New Mexico in *State v. Deming*, 66 N.M. 175, 180 (N.M. 1959), that "a person is guilty of driving while under the influence of intoxicating liquor if he or she is *to the slightest degree* . .

5 Since plaintiff does not argue that the officers lacked reasonable suspicion to conduct the traffic stop, the Court will not address that question.

Plaintiff does, however, appear to reassert an argument that this Court has already rejected: that Officer Griffin's administration of the field sobriety test was unlawful. *See* Pl.'s Opp. at 8–10 ("[T]here was nothing in Plaintiff's actions after he was stopped tending to establish probable cause to believe that Plaintiff was driving under the influence of alcohol at the time of his stop sufficient to support the administration of a field sobriety test."). As the Court already explained in its Order of August 10, 2011, "there is no legal requirement that there be probable cause before an officer can administer a field sobriety test." Order [Dkt. # 28] at 14, citing *Rogala v. District of Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998). And the Court is satisfied that Officer Griffin met the lower standard of "reasonable suspicion" to perform the field sobriety test since plaintiff had been driving at night without headlights, failed to pull to the side of the road immediately upon the officer's instructions, and admitted to having drunk alcohol that night. *Id.* at 14–15 & n.3.

. less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself or the public." 608 A.2d at 137. The court went on to remark that "[a]lthough 'appreciable is, in our view, a more appropriate word than 'slightest,' . . . we generally agree with the quoted definition of the Supreme Court of New Mexico of the [DUI] offense here at issue." *Poulnot*, 608 A.2d at 137. Moreover, the D.C. Court of Appeals has stated that "it is not necessary to be drunk in order to violate the DUI statute"; to prove that a defendant is guilty of DUI, 'the prosecution need not prove any specific degree of intoxication.'" *Anand v. District of Columbia*, 801 A.2d 951, 957 (D.C. 2002), quoting *Poulnot*, 608 A.2d at 138.

Plaintiff was operating his vehicle without lights, in the rain, at 11:30 p.m. After the police vehicle signaled for him to pull his car to the side of the road, he proceeded to drive six more blocks before pulling over, while the police car – sirens activated – followed behind. During the field sobriety tests, which are "designed to determine whether the motorist's physical coordination has been affected by the consumption of intoxicating liquor," *Karamychev*, 772 A.2d at 808, Officer Griffin observed erratic eye movements, plaintiff failed to walk in a straight line, and he disobeyed the officer's instructions. None of these facts are in dispute and, taken together, they provide a sufficient basis for an officer to reasonably believe that plaintiff was to some appreciable degree less able to exercise the mental and/or physical judgment necessary to safely handle an automobile. Moreover, the fact that plaintiff admitted to having consumed alcohol in any amount provided a sufficient basis for Officer Griffin to believe that the lack of

complete judgment was due to the influence of alcohol.[6] The Court, therefore, cannot find that it was unreasonable for Officer Griffin, under those circumstances, to believe that she had probable cause to arrest plaintiff for DUI/OWI.

Plaintiff contends that Officer Griffin lacked probable cause for the arrest because his driving showed no signs of impairment other than the failure to turn on his headlights. Pl.'s Opp. at 7. ("[I]t stands to reason that the officer would have to have something more than simply not having headlights on to consider whether a subject is driving under the influence." ). This argument overlooks plaintiff's failure to heed the directive to pull over.

Moreover, the case law makes clear that an officer need not observe lack of control over the vehicle in order to have probable cause for a DUI or OWI arrest. *See Stevenson*, 562 A.2d 622, 624 (D.C. 1989) ("Proof of impairment, however, need not be based upon the manner in which the vehicle was actually operated."). The two failed sobriety tests were strong evidence of impairment. In addition, characteristics such as impaired judgment may demonstrate a sufficient level of impairment. *See Anand*, 801 A.2d at 957. In fact "judgment problems" is one of the major categories of "visual cues" for impairment identified in the Metropolitan Police Department's DWI Detection and Standardized Field Sobriety Testing Student Training Manual ("Field Sobriety Testing Training Manual"). Ex. 3 to Pl.'s Opp. at V-6. Driving without headlights at night in the rain, and failing to obey officers certainly show impaired judgment.

Plaintiff also argues that the officers should have considered that he did not demonstrate many of the signs of intoxication identified in the Field Sobriety Testing Training Manual. Pl.'s

---

6 Officer Edwards also stated in his deposition that plaintiff had mentioned taking pain medication, Edwards Dep. at 27:9–11, so there may have been some basis for Officer Griffin to believe that the lack of judgment was due to drugs or to a combination of alcohol and drugs. However, this factor is not necessary for the Court's determination that Officer Griffin is protected by qualified immunity.

Opp. at 7–8. Looking at the totality of the circumstances, plaintiff claims, the few characteristics of impairment that he showed do not add up to probable cause for the arrest. *Id.* But nothing in the manual indicates that a person must demonstrate all, or even most, of the listed visual cues in order to satisfy the DUI or OWI standards. *See generally* Ex. 3 to Pl.'s Opp. And plaintiff has pointed to no precedent that clearly establishes that any particular number of visual cues must be observed. The Court is satisfied that the quantity and quality of the visual cues that Officer Griffin observed, as well as the results of the field sobriety tests, were sufficient to support a probable cause determination – or, at least, the officer's reasonable belief that she had probable cause.

Finally, plaintiff argues that Officer Griffin improperly administered the field sobriety tests, and he points to the testimony he elicited from another police officer with many years of experience administering the tests himself. Pl.'s Opp. at 10; Carter Dep., Ex. 7 to Pl.'s Opp. [Dkt. # 46-7]. Defendants argue that this evidence does not defeat summary judgment because any challenge to the way in which an officer administers a field sobriety test or interprets the results must be based upon expert testimony. According to defendants, since plaintiff has not designated an expert witness to testify on this matter, he cannot succeed in challenging Officer Griffin's administration of the tests as a matter of law.[7] Mem. of Points & Authorities in Support of Defs.' Mot. for Summ. J. [Dkt. # 45] ("Defs.' Mem.") at 10–11; Defs.' Reply to Pl.'s Opp. to their Mot. for Summ. J. [Dkt. # 49] ("Defs.' Reply") at 5–6. Plaintiff does not directly address this argument, but instead asserts that expert testimony is not necessary to show

7 The docket reflects that plaintiff withdrew his designation of Mr. Richard Rutledge, a former police officer, as an expert witness. Pl.'s Withdrawal of Expert Designation of Richard Rutledge (Feb. 2, 2012) [Dkt. # 44]; *see also* Pl.'s Designation of Expert Witnesses [Dkt. # 32] at 1.

"whether probable cause existed at the time of an arrest," which is a different and much broader inquiry. Pl.'s Opp. at 5.

Expert testimony is required when the subject matter is "beyond the ken of the average layperson." *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009). And as defendants point out, that is the case here. *See* Defs.' Mem. at 11. "There is no doubt that the administration of the [nystalgmus] test and the interpretation of the results are subjects 'beyond the ken' of a lay juror." *Karamychev*, 772 A.2d at 811–12. Thus, plaintiff has not supplied the evidence necessary to succeed in challenging Officer Griffin's administration of that test.

Plaintiff also argues that Officer Griffin did not administer the walk and turn test properly because she did not give the correct instructions. For similar reasons, the administration and interpretation of this test fall beyond the ken of the average lay person. An average person does not have knowledge of the purpose for each component of the test or of the implications of different ways that a subject might respond to the test. *See Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988), quoting *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987) ("[A] plaintiff is required to put on expert testimony where the subject presented is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson."). But even if plaintiff has presented sufficient evidence to demonstrate that Officer Griffin administered the walk and turn test incorrectly, that evidence does not give rise to a dispute of material fact that undermines the Court's conclusion. Plaintiff does not contest the fact that he could not complete the heel to toe walk forward and that he failed to follow the instructions that Officer Griffin gave him. Pl.'s Answers to Interrogs. at 2–3. So even if the instructions Officer Griffin gave did not comport with official protocol, the fact that plaintiff failed to follow them as given is itself evidence that he might have been impaired. *See* Field

Sobriety Testing Training Manual at VI-6 ("Be alert to the driver who . . . cannot follow instructions."). Looking at the totality of the circumstances presented to the officer at the time, then, the Court concludes that it was objectively reasonable for the officer to believe that she had probable cause to arrest the plaintiff for driving under the influence.

Accordingly, the Court finds that Officer Griffin's conduct in ordering the arrest is protected by qualified immunity.

B. Officer Edwards

The Court also finds that Officer Edwards, who completed the paperwork for the arrest, is protected by qualified immunity. Although Officer Edwards did not have firsthand knowledge of all of the circumstances justifying the arrest,[8] it was nonetheless reasonable for him to believe that he had probable cause under the doctrine of collective knowledge. Under the collective knowledge doctrine, "[t]here is no requirement that the arresting officer have sufficient firsthand knowledge to constitute probable cause. It is enough that the police officer initiating the chain of communication . . . had firsthand knowledge[.]" *Daniels v. United States*, 393 F.2d 359, 361 (D.C. Cir. 1968); *see also Barham v. Salazar*, 556 F.3d 844, 850 (D.C. Cir. 2009) (Henderson, J., concurring) ("An officer may rely on another officer's determination of probable cause to make an arrest[.]"). Here, Officer Edwards processed the arrest on Officer Griffin's instructions, Griffin's Answers to Pl.'s Interrogs. at 8–9, and Officer Griffin had firsthand knowledge of the justifications for the arrest. Accordingly, the Court finds that Officer Edwards is properly protected by qualified immunity.

8 In his deposition, Officer Edwards stated he arrived at the traffic stop while plaintiff was still in his car, but stood about fifteen feet from the scene, attending to general roadside safety for all involved and then turned his attention toward processing plaintiff's papers. Edwards Dep. at 21:15–22:12, 25:13–26:13, 28:16–29:9. According to Officer Edwards, in this role he heard and observed parts of the traffic stop, but his attention was mostly on the road and on processing plaintiff's identification. *Id.*at 22:13–21, 25:8–30:7.

Plaintiff argues that "there was little or no effort to share collective knowledge among the various officers who interacted with the plaintiff," Pl.'s Opp. at 8; however, the substance of the processing papers makes clear that Griffin relayed her observations to Edwards and Edwards processed the arrest on that basis. Prosecution Report, Ex. 4 to Pl.'s Opp. at 2; Def. Lauren Griffin Witness Statement, Ex. 5 to Pl.'s Opp. To Def.'s Mot. for Summ. J. [Dkt. # 46-5] at 1; Gerstein Aff. Officer Edwards, Ex. 14 to Pl.'s Opp. [Dkt. # 46-14] at 1. Plaintiff believes that Griffin should have shared, and Edwards should have considered, that some signs of intoxication were not observed. Pl.'s Opp. at 11–13. He also argues that Officer Edwards should have credited his "own observation (as well as the objective evidence) that Plaintiff was not in any way impaired[.]" Pl.'s Opp. at 12–13. However, as the Court has already discussed, Officer Griffin's observations were sufficient for a reasonable officer to believe that probable cause existed for the arrest, even under the totality of the circumstances. Accordingly, the knowledge that Officer Griffin shared with Officer Edwards was sufficient to establish probable cause for the arrest, or at least for a reasonable person in Officer Edwards's position to believe that probable cause existed. Therefore, Officer Edwards is entitled to qualified immunity for his role in the arrest.

## III. Defendant Officers Edwards and Hedgecock will be Granted Qualified Immunity For the Claims Arising from Plaintiff's Continued Detention after Receiving a .00 Breathalyzer Result.[9]

The next question before the Court is whether the officers are entitled to qualified immunity for the claim that it was unlawful to arrest the plaintiff after his breathalyzer test returned a blood alcohol level of .00. While there may have been other equally reasonable paths to take at that juncture, the law does not invite the Court to substitute its judgment for that of the officers. Applying the appropriate objective standard, then, the Court finds that it was reasonable for the officers to conclude that the circumstances remained sufficient to warrant a reasonable belief that plaintiff had committed a DUI offense, whether those circumstances actually rose to the level of probable cause or not.

First, the .00 breathalyzer result must be considered together with the facts that led Officers Griffin and Edwards to arrest plaintiff in the first place. While the breathalyzer test result is one factor to be added into the probable cause analysis, it did not wipe the slate clean of the prior information. *Gabrou*, 462 A.2d at 1104 ("Probable cause for an arrest and detention constitutes a valid defense to a claim of false imprisonment.").

So was it unreasonable for the officers to choose not to let the plaintiff go and to continue their investigation further? At the time of this arrest, the police were operating under a valid Metropolitan Police General Order that provides that if a roadside breath test returns a reading lower than .05 and no medical condition exists, "the officer may still make the determination to

---

9 Plaintiff alleges that Officer Griffin also had no probable cause to continue to detain him after the return of the breathalyzer result. Pl.'s Opp. at 3. However, since plaintiff has not put forth any evidence that Griffin was at the station during the breathalyzer test or at the time the results were returned, plaintiff has provided no basis on which the Court could find that she was liable for the continued detention. *Cf*. Pl.'s Opp. at 13, citing Griffin Dep. at 59–60 ("Officer Griffin testified that after Plaintiff was transported to the Second District Station, she had no further contact with him and very limited contact with Edwards or Carter, and none with Hedgecock.")

charge the individual with DUI . . . . Such determination is made on the basis of whether or not the subject's faculties are so impaired as to prevent the safe operation of a motor vehicle. This may be determined by the conducting of DUI Psychomotor Tests." General Order 502-2 (September 25, 1982), Ex. 11 to Pl.'s Opp. [Dkt. # 46-11] at 6.[10] Despite some evidence that plaintiff did not appear impaired at the time that the breathalyzer results were returned, plaintiff had already failed the walk and turn test as well as the nystagmus test, he had admitted to drinking a beer, he had been driving without headlights, and he had driven six blocks followed by a police car that had lights and sirens activated before pulling to the side of the road. In addition, the police officers did not simply ignore the .00 result, but rather – as plaintiff himself acknowledges – they proceeded to administer a urine test. Pl.'s Answers to Interrogs. at 3. Moreover, plaintiff points to no law indicating that a .00 breathalyzer result is an absolute bar to a finding of probable cause to detain for DUI.

Accordingly, the Court cannot find that clearly established law existed such that a reasonable person would have known that there was no probable cause for the officers to continue processing the arrest. Therefore, whether or not the Court agrees with their decision to maintain plaintiff under arrest after the breathalyzer test returned a blood alcohol level of .00, the Court finds that Officer Edwards and Lieutenant Hedgecock are protected by qualified immunity.

---

10 In this case the breathalyzer test was not administered until plaintiff had already been booked, but there is no reason to expect the officers to treat the results any differently than they would treat a breathalyzer test administered roadside.

## CONCLUSION

For the reasons stated above, the Court finds that defendants Griffin, Edwards, and Hedgecock are entitled to qualified immunity as a matter of law. Accordingly, the Court will grant the motion for summary judgment. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: February 22, 2013